[No. C003443. Third Dist. Feb. 7, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
FRANK A. PEREIRA, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and W. Scott Thorpe, Deputy Attorney General, for Plaintiff and Appellant.

Clyde M. Blackmon, Dale A. Drozd, Steven Meinrath and Blackmon & Drozd for Defendant and Respondent.

OPINION

**PUGLIA, P. J.**—An indictment charged defendant, Frank Pereira, with two counts of offering false evidence (Pen. Code, § 132) and two counts of preparing false documentary evidence (Pen. Code, § 134; hereafter all statutory references to sections of an undesignated code are to the Penal Code). Defendant moved to set aside the indictment (§ 995). The trial court granted the motion as to counts one and three and denied the motion as to counts two and four. The People appeal the order of dismissal (§ 1238, subd. (a)(1)).

The dismissed counts charged violations of section 132 under which one who "offers in evidence" any document as genuine or true in any trial, proceeding, inquiry or investigation authorized by law, knowing the document to have been fraudulently altered, is guilty of a felony. In this appeal we shall conclude that knowing delivery of such documents to investigating officials of the Fair Political Practices Commission and to counsel in the course of civil proceedings to enforce a judgment in each instance

constitutes an "[offer] in evidence" in violation of section 132. Accordingly, we shall reverse the order dismissing counts one and three.

The charges against defendant are the outgrowth of an investigation commenced in March 1983 by the Fair Political Practices Commission (FPPC) into the affairs of former Sacramento County Supervisor William Bryan. One of the matters investigated by the FPPC concerned Bryan's alleged failure to report a $200,000 loan which he obtained in 1981 from defendant's loan brokerage firm. During the investigation, the FPPC served defendant with a subpoena duces tecum to produce documents concerning the loan. Defendant complied, producing documents which included a copy of the original loan application. According to the record, defendant concurrently gave "testimony" before the FPPC investigating officer that he had made written changes to the loan application but implied these changes were made at the time he was considering the application, rather than after the loan was made.

In November 1982, approximately six months before the FPPC commenced its investigation of Bryan, defendant had been served with a subpoena duces tecum by Attorney Michael Hackard. Hackard represented Whitworth Estates Corporation in a civil action against Bryan and a corporation with which Bryan was affiliated. After Hackard obtained a judgment on behalf of Whitworth, he learned defendant held deeds of trust against various properties in Sacramento County owned by Bryan. By means of the subpoena duces tecum, Hackard sought to discover from defendant information which might facilitate collection on the judgment.

In response to the subpoena, an attorney for defendant contacted Hackard and an agreement was reached whereby the documents requested would be produced voluntarily without the necessity of a subpoena. Hackard dropped the subpoena duces tecum. Counsel for defendant provided Hackard with a number of documents, including a copy of the aforementioned loan application.

After the FPPC commenced its investigation of Bryan, it obtained a copy of the loan application which had been provided to Hackard by counsel for defendant. A comparison of the copy given Hackard with the copy defendant submitted to the FPPC revealed the two documents were not identical. The copy given to the FPPC contained more information than did the copy provided to Hackard. Further, the reverse side of the copy given to the FPPC contained numerous handwritten notes which did not appear on the copy which Hackard had obtained.

In March 1987, the original loan application was seized from defendant's office pursuant to a search warrant. The original contained more informa-

tion than did the copy given to Hackard. The copy turned over to the FPPC was essentially identical to the original.

Expert examination of the original loan application revealed a number of material alterations both to the front and reverse sides. Different colored inks had been used in the changing of dates and certain initials had likewise been altered.[1] Some of the writing on the face of the original and all of the notes on the back were in defendant's handwriting.

Section 132 provides: "Every person who, upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently altered or antedated, is guilty of a felony."

The first count of the indictment alleges defendant violated section 132 by an "[offer] in evidence" to the FPPC of a loan application which defendant knew to be fraudulently altered and antedated. Count two charges defendant violated section 134 by preparing a false version of the same loan application with the intent that it be produced for a fraudulent and deceitful purpose in the FPPC investigation, "a proceeding and inquiry authorized by law," in contemplation of section 134.[2] Counts three and four pertain to the same loan document involved in the first two counts. Count three alleges defendant violated section 132 by an "[offer] in evidence" in a civil proceeding, Whitworth Estates Corporation v. Hawaii Properties Listed, of a loan application which he knew to be fraudulently altered and antedated. Count four charges defendant violated section 134 by preparing a false version of the same loan document with the intent that it be produced for a fraudulent and deceitful purpose in a civil proceeding, Whitworth Estates Corporation v. Hawaii Properties Listed. The trial court dismissed the two counts charging violation of section 132.

---

[1] Concurrent with his delivery of the loan application, defendant testified before the FPPC that the initials "AKP" on the back of the application referred to his wife. However, there was expert testimony before the grand jury that the initials originally were "AKT" and had been altered to read "AKP." "AKT" are the initials of Angelo K. Tsakopoulos, a land developer. In the course of the FPPC investigation, evidence was discovered suggesting that Tsakopoulos was the true source of approximately $256,000 in loans made to Bryan ostensibly by defendant's loan brokerage firm. On the basis of this information, the FPPC amended a civil complaint filed against Bryan to include two charges of conflict of interest resulting from Bryan's supervisorial votes on land use matters involving property in which Tsakopoulos had an interest.

[2] Section 134 provides: "Every person guilty of preparing any false or antedated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of felony."

In considering defendant's motion to dismiss, the trial court appears to have assumed that both the FPPC investigation and the civil proceeding were "proceedings authorized by law," but that in neither instance did defendant's production of the altered documents constitute an "[offer] in evidence" within the meaning of section 132. The court explained: "In the instant case the defendant produced the information at the behest of others in matters relating to someone else. He was not a party and hence could not and did not offer the documents in evidence as that term is understood in legal circles. [¶] The People argue[ ] that in order to give full meaning to the statute the phrase offer in evidence must be determined more broadly than defendant's interpretation. They argue that because Section 132 speaks of offering in evidence in a trial, proceeding, inquiry, or investigation it means to include more than the formal offering of evidence in a trial or hearing. [¶] I disagree. The defendant, a non-party in the Bryan matter, in my judgment cannot be said to have offered anything in evidence, even in the less formal investigative or investigatory proceeding. . . . [¶] In Count Three the defendant's attacks are the same as those on Count One. He claims in part that the production of documents to Mr. Hackard did not amount to an offering into evidence. [¶] For the same reasons that I discussed with regard to Count One, I do not believe that the mere producing of the documents to Mr. Hackard can be equated with offering the documents in evidence as a non-party. The defendant did produce the documents. But to stretch that act into an offer of evidence . . . would be to go beyond a reasonable interpretation of section 132."

██ "In California, there is no rule of strict construction of penal statutes. Such statutes are to be construed '. . . according to the fair import of their terms, with a view to effect [their] objects and to promote justice.' [Citations.] A statute is to be given a reasonable and common sense construction in accordance with its apparent purpose and the intent of the Legislature—one that is practical rather than technical and that will lead to a wise policy rather than to mischief or an absurdity. [Citation.] The legislative intent should be gathered from the whole statute rather than from isolated parts or words. All of the parts should be construed together if possible without doing violence to the language or spirit of the statute. [Citation.]" (*People* v. *Fields* (1980) 105 Cal.App.3d 341, 343-344 [164 Cal.Rptr. 336].)

The phrase "offers in evidence" must be construed in the context of and harmonized with the other words in section 132. The act characterizing a violation of section 132 is an offer in evidence occurring "upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law . . . ." "[A]ny . . . proceeding, inquiry, or investigation whatever, authorized or permitted by law" bespeaks a broad range of formal as well as

informal settings in which an "[offer] in evidence" may constitute a violation of the section. Viewed in this light, the phrase "[offer] in evidence" is not used in a technical sense or as a term of art. ■■ Thus the tender of documents pursuant to a subpoena duces tecum issued by the FPPC constitutes an offer in evidence within the meaning of section 132 if made during a proceeding, inquiry or investigation authorized or permitted by law.

An FPPC investigation is one "authorized or permitted by law" within the meaning of section 132. Government Code section 83115 commands the FPPC "[u]pon the sworn complaint of any person or on its own initiative" to "investigate possible violations" of the Political Reform Act. (Gov. Code, § 81000 et seq.) The FPPC may "subpoena witnesses, compel their attendance and testimony, administer oaths and affirmations, take evidence and require by subpoena the production of any books, papers, records or other items material to the performance of the Commission's duties or exercise of its powers." (Gov. Code, § 83118.) The "duties" and "powers" of the Commission of course include investigation of "possible violations" of the Political Reform Act. (Gov. Code, § 83115.)

Government Code section 83119 provides the FPPC "may refuse to excuse any person from testifying, or from producing books, records, correspondence, documents or other evidence in obedience to the subpoena of the [FPPC] notwithstanding an objection that the testimony or evidence required" may "tend to incriminate" the person subpoenaed. ■ ■■ ■■ ■ Government Code section 83119 further confers transactional immunity on those whose testimony is so compelled. Defendant does not contend that the compulsory process of a subpoena violated his constitutional rights against self-incrimination (U.S. Const., Amend. V; Cal. Const., art I, § 15.)[3]

The subpoena duces tecum to defendant to produce the Bryan loan application was issued in furtherance of such an investigation of "possible viola-

[3]The loan application was manifestly relevant to both the FPPC investigation and the civil judgment enforcement proceedings and defendant makes no claim to the contrary. If the subpoena called for production of irrelevant matter or was otherwise defective or if compliance would have infringed defendant's constitutional rights, defendant could have moved to quash or alternatively have refused compliance and presented his excuse when enforcement was attempted against him. (*People* v. *Warburton* (1970) 7 Cal.App.3d 815, 824 [86 Cal.Rptr. 894]; see *Southern Pac. Co.* v. *Superior Court* (1940) 15 Cal.2d 206, 210 [100 P.2d 302, 130 A.L.R. 323]; *Pelton Motors, Inc.* v. *Superior Court* (1953) 120 Cal.App.2d 565, 569-570 [261 P.2d 275].) By complying with the subpoena without challenging relevance (120 Cal.App.2d at p. 569; *People* v. *Rummler* (1975) 44 Cal.App.3d 638, 642-643 [118 Cal.Rptr. 872]) or objecting on grounds of compelled self-incrimination (*People* ex rel. *Clancy* v. *Superior Court* (1985) 39 Cal.3d 740, 744-745 [218 Cal.Rptr. 24, 705 P.2d 347]), defendant waived any such claims (see *United States* v. *Oliver* (8th Cir. 1975) 525 F.2d 731, 734-735; *People* v. *Randall* (1970) 1 Cal.3d 948, 955 [83 Cal.Rptr. 658, 464 P.2d 114]). Thus the extended discussion of relevance and self-incrimination in the dissent is wholly gratuitous.

tions" of the Political Reform Act (Gov. Code, § 83115). At the time defendant delivered the requested documents in response to the subpoena he submitted to questioning by the official in charge of the FPPC investigation concerning the loan application. A partial transcript of that interview, in evidence before the grand jury, refers to defendant's responses to the questions as "testimony." Although it does not appear whether or not defendant's testimony was under oath, the FPPC was clearly authorized to swear defendant on that occasion for the purpose of "tak[ing] evidence." (Gov. Code, § 83118.)

■ The purpose of an FPPC investigation as authorized by Government Code section 83115 is to gather evidence. One who in response to an FPPC subpoena knowingly submits fraudulently altered or antedated documents in such an investigation, "offers in evidence" the documents so tendered within the meaning of section 132.[4]

■ We further conclude that within the meaning of section 132 defendant "[offered] in evidence" the documents provided Hackard pursuant to the subpoena and subsequent informal agreement in the civil judgment enforcement proceeding involving Whitworth Estates Corporation (hereafter Whitworth).

Code of Civil Procedure section 1985 defines a subpoena as "[a] writ or order directed to a person and requiring his attendance at a particular time and place to testify as a witness. It may also require him to bring with him any books, documents, or other things under his control *which he is bound by law to produce in evidence.*" (Italics added.) Defendant does not claim that the issuance of a subpoena duces tecum is not legally authorized in a proceeding under the statutory provisions to enforce a judgment. (Former Code Civ. Proc., § 681 et seq.; present § 680.010 et seq.)[5]

Indeed, the usual supplementary proceeding utilized by a judgment creditor such as Whitworth seeking to discover property of the judgment debtor to apply toward satisfaction of a money judgment is an order to the judgment debtor to submit to examination and answer questions regarding the

---

[4] This construction of the statute obviously is not so sweeping and indiscriminate as to encompass, as charged in the dissent, "all deliveries of forged documents during an investigation." (*Post,* at p. 1076.)

[5] At the time Hackard served the subpoena duces tecum, the applicable law concerning enforcement of judgments was found in title IX, "Execution of Judgment in Civil Actions" (former Code Civ. Proc., § 681 et seq.). Effective July 1, 1983, the former procedure was replaced with the new "Enforcement of Judgments Law." (Code Civ. Proc., § 680.010 et seq.; Stats. 1982, ch. 1364, § 2, p. 5070; § 3, p. 5236.) Our discussion focuses on the law in effect at the time of service of the subpoena duces tecum, although a similar analysis would obtain under the new procedure.

debtor's property. (Former Code Civ. Proc., § 714; present § 708.110, subd. (a); see 8 Witkin, Cal. Procedure (3d ed. 1985) Enforcement of Judgment, § 274, p. 237; Debt Collection Practice in Cal. (Cont.Ed.Bar 1987) §§ 8.5-8.18, pp. 568-581; Cal. Debt Collection Manual (Cont.Ed.Bar 1978) §§ 9.2-9.16, pp. 574-586.) The examination is held before either a judge or court appointed referee (former Code Civ. Proc., § 714; present § 708.110, subd. (a)). In preparation for the examination, discovery may be necessary as the actual examination is not so much a device to gather information as it is a tool to confirm the existence of certain assets. (Debt Collection Practice in Cal., *op. cit. supra*, § 8.18, pp. 580-581; see Cal. Debt Collection Manual, *op. cit. supra*, § 9.16, p. 586.) Thus, the use of a subpoena duces tecum to discover and inspect relevant documents is an accepted practice. (*Ibid.*)

Moreover, under the statutory scheme to enforce judgments, the examination is similar to a trial in which witnesses are required to appear and to testify "in the same manner as upon the trial of an issue" (former Code Civ. Proc., § 718; present Code Civ. Proc., § 708.130, subd. (a)). At the conclusion of the examination, the judge or referee may order the judgment debtor's interest in the property applied to satisfy the money judgment. (Former Code Civ. Proc., § 719; present Code Civ. Proc., § 708.205.) Thus, the production of documents pursuant to a subpoena duces tecum in contemplation of a debtor's examination is an "[offer] in evidence" at a "trial, proceeding, inquiry, or investigation . . . authorized or permitted by law . . . ." (§ 132.)

That the documents were ultimately produced pursuant to an agreement between counsel and not in direct response to the subpoena duces tecum is of no import. It would be illogical to hold criminal sanctions for offering false documents in evidence could be avoided simply by agreeing voluntarily to produce the evidence in consideration for the dropping of a subpoena. (Cf. Code Civ. Proc., § 1985.1 [person subpoenaed to appear at a time certain may agree with issuing party to appear at another time and the agreement is enforceable by *contempt*].) In either case, the result is the same: the offer in evidence of forged or fraudulently altered or antedated documents in a proceeding authorized by law.

Although not directly on point, *People* v. *Fields, supra,* 105 Cal.App.3d 341, is instructive. In *Fields,* the defendant, an inmate of a county jail, was convicted of violating section 135 (destruction of evidence) when he flushed marijuana down the toilet after he had grabbed it from an officer who had seized it in the jail.[6] On appeal defendant argued that because section 135

---

[6]Section 135 states: "Every person who, knowing that any book, paper, record, instrument in writing, or other matter or thing, is about to be produced in evidence upon any trial,

expressly prohibits the destruction only of materials "about to be produced in evidence upon any trial, inquiry, or investigation whatever," it applied only in instances where *formal* legal proceedings were pending. Rejecting this cramped construction, the *Fields* court characterized defendant's argument as "contrary to the fair import of the statute; it ignores the words 'or investigation *whatever*' [italics in original]." (*Fields, supra,* 105 Cal.App.3d at p. 345.) The court concluded that when defendant "grabbed the contraband . . . and flushed it down the toilet, he intentionally destroyed the contraband to prevent it from being 'produced in evidence' at a 'trial, inquiry or investigation . . . .'" (*Id.* at p. 346.)

Like section 135, section 132 condemns acts committed in the context of any "investigation whatever, authorized by law. . . ." Manifestly, the scope of section 132 extends beyond those situations involving the formal introduction in evidence of documents in a court of law.[7]

Also instructive is *People* v. *Clark* (1977) 72 Cal.App.3d 80 [139 Cal.Rptr. 817]. In *Clark,* the defendant was charged with violating section 134, (see fn. 2, *ante,* p. 1062) based on his alleged preparation of a false document introduced by his representative at a grievance committee hearing at a state university where defendant had sought employment. The trial court dismissed the information, ruling section 134 did not apply to such an administrative proceeding. The appellate court reversed, holding section 134 clearly encompassed the grievance board hearing, as it was both a *proceeding* authorized by and an *inquiry* pursuant to law, i.e., Education Code section 24315. The court concluded: "The Legislature in addition to providing that this section apply to full-scale trials, provides a penalty for falsely produced material at other proceedings or inquiries 'authorized by law,' which plainly need not be full-scale trials." (*Id.,* at pp. 83-84.)

Defendant points out section 132 has been applied only in formal, legal proceedings, such as a trial or probate proceeding. (E.g., *People* v. *Geibel* (1949) 93 Cal.App.2d 147, 169-170 [208 P.2d 743] [offering forged will for probate]; *People* v. *Horowitz* (1945) 70 Cal.App.2d 675, 685-688 [161 P.2d 833] [offering forged will for probate]; *People* v. *Hooper* (1935) 10 Cal.App.2d 332, 333-335 [51 P.2d 1131] [forged check not received in evidence but marked for identification and referred to in testimony].) We know of no authority, however, proscribing the application of section 132 to

---

inquiry, or investigation whatever, authorized by law, willfully destroys or conceals the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor."

[7] Defendant expressly disavows any challenge to section 132 as being insufficiently definite to satisfy the due process requirement that a criminal statute give adequate notice of the conduct required to avoid its penalties. (See *People* v. *Superior Court (Hartway)* (1977) 19 Cal.3d 338, 345 [138 Cal.Rptr. 66, 562 P.2d 1315].)

less formal proceedings. The defendant is wrong in suggesting that *People* v. *Wignall* (1932) 125 Cal.App. 465 [13 P.2d 995] is such authority. Wignall was charged in three counts with (1) forging a will, (2) causing the forged will to be filed of record in the office of the county clerk and (3) "offering the forged will in evidence in a probate proceeding entitled 'In the matter of the Estate of Charles Wellington Scott, deceased.'" (At p. 467.) Wignall was convicted of all three counts. The appellate court reversed the conviction for offering in evidence for lack of any evidence that the forged will was ever offered in evidence in a probate proceeding as charged. (P. 475.) There was evidence sufficient to sustain the conviction, under a separate penal statute for causing the forged will to be filed of record in the office of the clerk. (At p. 475.) It was not contended, nor could it be, that the act of filing the forged will with the clerk occurred upon a "trial, proceeding, inquiry, or investigation" within the meaning of section 132.

Even assuming section 132 has not been invoked in extra-judicial proceedings, that "is not authority against permitting such use." (*People* v. *Clark, supra,* 72 Cal.App.3d at p. 84.) ■ Moreover, the objective of section 132, as with section 134 with which the *Clark* court dealt, "is to prevent the fraudulent introduction of material in a proceeding under the authority of law. To apply the . . . section to inquiry proceedings is necessitated by the purpose of discouraging introduction of this material." (*Id.,* p. 84.)

■ Defendant contends that section 132 applies only to the "subjects" of an investigation or inquiry or to the "parties" in a civil proceeding. We disagree. By its terms section 132 applies to "every person." The object of preventing the introduction of fraudulent material in a proceeding authorized by law would be severely compromised if application of the section were limited only to those who are the subject of the investigation or parties to the proceeding.

■ Defendant argues that on these facts violation of section 134 constitutes the only proper charge. Again we disagree. Sections 132 and 134 are complementary. The latter section applies to the *preparation* of a false or antedated document with the intent to produce it or allow it to be produced for any fraudulent purpose. The former section applies to the actual *offer in evidence* of a false or fraudulently altered or antedated document. Each section deals with a discrete act and in a proper case a defendant may be charged with and convicted of both.

■ Defendant asserts that even though he may have altered the loan document, the evidence is insufficient to show that he did so with a fraudulent purpose or intent to deceive. The only mental element essential to a

violation of section 132 is knowledge concurrent with the offer in evidence that the document has been fraudulently altered or antedated. Here, not only was the copy of the document sent to Hackard different from the original, but the numerous alterations to the original which were also included on the copy sent to the FPPC were in defendant's handwriting. Evidence was presented to the grand jury to show that when defendant tendered the requested loan document both to Hackard and to the FPPC, he did so knowing the document had been fraudulently altered or antedated. Moreover, there was evidence that defendant was untruthful when he told the FPPC the alterations were made before the loan was approved. The evidence before the grand jury reasonably gives rise to a strong suspicion (*People* v. *Uhlemann* (1973) 9 Cal.3d 662, 667 [108 Cal.Rptr. 657, 511 P.2d 609]) that with culpable knowledge defendant on two occasions offered in evidence as genuine and true a forged and altered document.[8]

The judgment of dismissal is reversed.

Deegan, J.,* concurred.

**SPARKS, J.**—I dissent.

Penal Code section 132 declares that "[e]very person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently altered or antedated, is guilty of felony." For the first time in its 117-year history, the majority today holds that the mere delivery of documents to a state functionary conducting a preliminary investigation and to an attorney seeking discovery to enforce a civil judgment constitutes an "offer[ ] in evidence" within the meaning of this section. This astonishing holding mistakenly converts technical terms into ordinary and different ones and thereby unjustifiably and exponentially expands a narrow criminal statute into a penal dragnet. This construction of the statute under the facts of this case also flies in the face of settled principles of Fifth Amendment jurisprudence.

---

[8]Pointing out that the loan application and related documents were mailed to Attorney Hackard not by defendant but by his Attorney, the dissent professes difficulty in understanding "how the majority can conclude, even given its construction of the statute, that there was reasonable or probable cause to believe that defendant offered [these] forged documents in evidence . . . ." (*Post,* fn. 2, p. 1071.) The answer quite simply is that we have not so concluded for the reason that we are not called upon to do so. The sufficiency of the evidence in this context was not challenged either in the trial court or on appeal. We note that the only claim of evidentiary insufficiency, to which we have responded, is presented by defendant on the express premise that the documents were, as variously stated in his brief, "supplied" and "produced" by defendant.

* Assigned by the Chairperson of the Judicial Council.

Under this misreading of the statute, it would, for example, be a felony to give a building inspector conducting an authorized investigation into a housing code violation a known fraudulently back-dated invoice. But the physical delivery of a forged document to an investigating official does not constitute an offer in evidence. In my view, "offers in evidence" means to submit a document to a judge or other hearing officer for formal admission into the official record of some evidentiary trial, proceeding, inquiry or investigation. So construed, defendant did not offer the forged documents in evidence and consequently did not violate Penal Code section 132. (All further statutory references are to the Penal Code unless otherwise noted.) I would therefore affirm the dismissal of the counts charging a violation of this section.

As the majority notes, two counts of the indictment charged violations of section 132. The first count related to an investigation conducted by the Fair Political Practices Commission. The Executive Director of the Fair Political Practices Commission (Commission) issued a subpoena duces tecum on February 3, 1984. It was captioned "In the matter of William M Bryan" and jointly directed defendant Frank A. Pereira and "Pereira-Stathos, Inc." to bring "the originals or true, complete, and legible copies" of various documents and produce them at the Sacramento office of the Commission on February 27, 1984. Among the documents subpoenaed were "[a]ll records or writings of any type relating to a loan of $200,000 made to William M Bryan (Bryan) and/or Joann P. Bryan on or about September 11, 1981." In particular, the subpoena directed the production of "[a]ll loan or credit applications or financial statements provided by Bryan." As a staff attorney for the Commission later testified before the Sacramento County Grand Jury, "[b]asically, we were looking for what information Pereira-Stathos and Frank Pereira had in their possession regarding all loans that they might have made to Mr. Bryan, including the $200,000 loan made in September of '81."

The documents in question are the corporate loan papers and for reasons not explained in the record the documents were not produced before the Commission on February 3, 1984. Instead, they were physically delivered on March 19, 1984, by defendant and his counsel to Judith Sproul Davis, an attorney with the enforcement division of the Commission, at her office in Sacramento. No official hearing was being conducted by the Commission at that time and the records were neither offered nor accepted in evidence by anyone.[1] Evidence later adduced before the grand jury established that the

---

[1] The Commission is empowered to "investigate possible violations" of the Political Reform Act of 1974. (Gov. Code, § 83115.) If it determines that there is probable cause for believing the act has been violated, "it may hold a hearing to determine if such a violation has occurred." (Gov. Code, § 83116.) The hearing must be conducted in accordance with the

loan application documents delivered by defendant had been altered. The delivery of these documents to Mrs. Davis led to the first count of offering forged documents in evidence.

The second count of violation of section 132 involved "civil discovery in the case of Whitworth Estates Corporation v. Hawaii Properties Listed, Sacramento Superior Court Number 301030." The evidence before the grand jury established that Attorney Michael Hackard represented the plaintiff, Whitworth Estate Corporation. In an effort to collect a judgment against the defendant, Hawaii Properties Listed, a company affiliated with Supervisor Bryan, Mr. Hackard served a subpoena duces tecum on Pereira-Stathos, Inc. The subpoena sought corporate documents relating to deeds of trust in favor of Pereira-Stathos, Inc. on property owned by Bryan. An attorney representing Pereira-Stathos, Inc. telephoned Hackard in response to the subpoena and agreed to provide informal discovery, meaning that he would provide the documents sought by the subpoena. The documents in question were mailed to Hackard by the attorney. This series of events led to the second count of violating section 132.[2]

The trial court, correctly in my view, granted defendant's motion to dismiss the section 132 counts on the utterly sensible ground that defendant "cannot be said to have offered anything in evidence, even in the less formal investigative or investigatory proceeding. . . . [¶] . . . The defendant did produce the documents. But to stretch that act into an offer of evidence in my judgment would be to go beyond a reasonable interpretation of Section 132."

Without accounting for the words of the statute, the majority reads the statute broadly to cover informal settings such as conferences in an official's office and mail deliveries to an attorney's office where, one may suppose, documents are never technically offered in evidence. But as we shall see, neither the history of the statute nor the rules of statutory construction justify the majority's bizarre construction of the phrase "offers in evidence" to mean any delivery of documents to an official or other person conducting an authorized investigation.

I begin with the legislative and judicial history of the statute. Section 132 was enacted as part of the original Penal Code of 1872. It was part of a

---

Administrative Procedure Act. (*Ibid.*) No such hearing was underway when the documents in question in this case were delivered to staff counsel.

[2]Since no evidence was adduced before the grand jury that defendant either mailed the forged documents, or caused them to be mailed, to Attorney Hackard, it is difficult to understand how the majority can conclude, even given its construction of the statute, that there was reasonable or probable cause to believe that defendant offered forged documents in evidence as alleged in the civil discovery count.

chapter dealing with "Falsifying Evidence." (Ch. 6 of pt. I, tit. 7, enacted 1872.) "This chapter," the code commissioners noted, "is founded upon § 3 of the act of April 27, 1863 (Stats 1863 p. 645) and §§ 84 and 86 of the Crimes and Punishment Act, as amended by the act cited. The language adopted is that of the New York Penal Code, §§ 165 to 170, inclusive." (See Deering's Ann. Pen. Code (1985 ed.) § 132 et seq., p. 223; see also *People* v. *Newton* (1963) 222 Cal.App.2d 187, 189-190 [34 Cal.Rptr. 888].) The several statutes in this chapter created crimes for "acts interfering with the administration of justice." (*Id.*, at p. 189.) Like the New York model, section 132 dealt with "Offering false evidence" and condemned every person who knowingly "offers in evidence, as genuine and true" any forged document in "any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law." (§ 132, enacted 1872.) Section 133 dealt with "Deceiving a witness" and provided that every person who "makes or exhibits" any false statement to a witness with intent to affect his testimony in "any trial, proceeding, inquiry, or investigation whatever, authorized by law" was guilty of a misdemeanor. (§ 133, enacted 1872.) Section 134 covered "Preparing false evidence" and denounced the preparation of any false document "with intent to produce it, or allow it to be produced" as genuine or true for any false or deceitful purpose in "any trial, proceeding, or inquiry whatever, authorized by law." (§ 134, enacted 1872.) Section 135 covered "Destroying evidence" and prohibited any person from destroying or concealing any document or thing knowing it "is about to be produced in evidence upon any trial, inquiry, or investigation whatever, authorized by law." (§ 135, enacted 1872.) Section 136 dealt with "Preventing or dissuading witness from attending" and punished every person who willfully "prevents or dissuades" any witness from attending "any trial, proceeding, or inquiry, authorized by law." (§ 136, enacted 1872.) Section 137 dealt with "Bribing witnesses" and declared every person guilty who "gives or offers, or promises to give" any bribe to a witness to influence him or otherwise fraudulently induces him to give false or withhold true testimony. (§ 137, enacted 1872.) Finally, section 138 covered "Taking or offering to take bribes" and declared that every witness who "receives or offers to receive" any bribe to influence his testimony or to absent himself from the "trial or other judicial proceeding" was guilty of a felony. (§ 138, enacted 1872.)

As the Court of Appeal noted in *People* v. *Newton, supra,* 222 Cal.App.2d 187, "all of the contemporaneous code sections [in this chapter] use broad language, such as 'trial, proceeding, inquiry, or investigation whatever, authorized by law' or 'trial or proceeding,' and so by their language specifically apply to proceedings other than trials as well as to trials." (*Id.,* at p. 190; see also *People* v. *Fields* (1980) 105 Cal.App.3d 341, 345-346 [164 Cal.Rptr. 336].) Thus in a case involving section 135, the appellate court held that a grievance committee hearing at a state university authorized by

the Education Code came within the statutory terms of "any trial, proceeding, or inquiry whatever, authorized by law." (*People* v. *Clark* (1977) 72 Cal.App.3d 80, 83-84 [139 Cal.Rptr. 817].) "The Legislature in addition to providing that this section apply to full-scale trials, provides a penalty for falsely produced material at other proceedings or inquiries 'authorized by law,' which plainly need not be full-scale trials. The instant grievance board hearing is both a proceeding authorized by law, Education Code section 24315, and an inquiry pursuant to that code section." (*Ibid.*)

Section 132 itself has not been the subject of extensive judicial interpretation. It was first construed in *People* v. *Wignall* (1932) 125 Cal.App. 465 [13 P.2d 995]. There defendant was convicted of the several offenses, including the crime of offering a forged will in evidence in a probate proceeding. The Court of Appeal reversed the offering in evidence conviction for lack of evidence. "There is no evidence in the record sustaining his conviction on the third count wherein he is charged with offering the forged will in evidence in the probate proceeding. This is not mentioned in the testimony of any witness and is not covered by any admission or stipulation of counsel. A copy of the forged will is before us. It contains no indorsement which would even tend to indicate that it had ever been introduced in evidence in any probate proceeding. Its only indorsement is 'Filed Feb. 16, 1931 Harry L. Allison Clerk By M. L. Aldridge, Deputy.' This is the date it was filed with the petition for its probate. This date is material under the second charge of filing [a false document with the county clerk], but not under the third, of offering it in evidence." (*Id.,* at p. 475.)

The statute was next considered in the *People* v. *Hooper* (1935) 10 Cal.App.2d 332 [51 P.2d 1131]. There defendant was sued by his landlord in the municipal court for back rent. At the trial defendant produced a rent check with a forged endorsement stating, "All previous rent paid." (*Id.,* at p. 334.) On appeal from a conviction for violation of section 132, defendant argued that the check in question had never been "offered in evidence" and consequently his conviction was not supported by the evidence. Rejecting that argument, the court affirmed the conviction. "It is true," the court noted, "that the record does not disclose that the check was ever marked as an exhibit in the civil case, and the court reporter at that trial could not discover from his notes that it was ever formally introduced in evidence. But the check was produced in the municipal court by appellant's attorney, appellant there testified as to the check and the disputed endorsement, it was marked for identification, was examined by the court and was the subject of expert testimony and legal argument. We are of the opinion that such use of the document constitutes an offering in evidence within the meaning of the section." (10 Cal.App.2d at pp. 334-335.)

The appellate court next passed on section 132 in *People* v. *Horowitz* (1945) 70 Cal.App.2d 675 [161 P.2d 833]. In that case defendant forged a will, caused it to be filed for probate and offered it in evidence during a will contest proceeding. The reviewing court summarily ruled that defendant had properly been convicted of offering the forged will in evidence in violation of section 132. "He offered it for probate. He defended a contest filed by [decedent's husband]. He knowingly offered the forged instrument in evidence, the crime denounced by section 132." (*Id.,* at p. 688.) In a later habeas corpus proceeding, the California Supreme Court similarly concluded that the evidence sufficiently showed "petitioner violated section 132 of the Penal Code by offering the forged will in evidence in the probate proceeding." (*In re Horowitz* (1949) 33 Cal.2d 534, 544 [203 P.2d 513].) Substantially the same issue arose in *People* v. *Geibel* (1949) 93 Cal.App.2d 147 [208 P.2d 743]. There defendant was convicted of violation of 132 by offering a forged will in probate. On appeal defendant argued that offering a false will for probate did not violate section 132. He rhetorically asked in his brief on appeal: "At a hearing where a will is presented for probate, is it offered in evidence or is it just offered for probate?" (*Id.,* at p. 169.) Citing *Hooper,* the court had no difficulty in concluding the forged will had been offered in evidence. "In the instant case there is evidence that the will was offered for probate by appellant or at his behest, and at the hearing on the petition for admission to probate of the will, appellant appeared not only as one of the attorneys for the petitioner, but there testified as to the execution of the will and the genuineness of the disputed signature of the testator. The document was examined by the court, and was the subject of expert testimony and legal argument. We are persuaded that such use of the instrument constitutes an offering in evidence within the meaning of the code section . . . ." (*Id.,* at pp. 169-170, citation omitted.)

The only lessons to be learned from this legislative and judicial history are that section 132 applies to proceedings other than trials, that the filing of a forged document with a public official does not constitute an offer in evidence, and that a forged document presented at a hearing need not be marked as an exhibit or formally admitted into evidence in order to constitute an offer in evidence. But nothing in this history suggests that the phrase "offers in evidence" somehow means delivery to the custody of an investigating official.

Nor do the rules of statutory construction aid the majority's construction. Section 7, subdivision 16 directs that "[w]ords and phrases must be construed according to the context and approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning." An offer in evidence is both a

technical phrase and one which has well known meaning in the law. In the context of legal proceedings, "to 'offer' evidence is to state its nature and purport, or to recite what is expected to be proved by a given witness or document, and demand its admission." (Black's Law Dict. (5th ed. 1979) p. 975, col. 2.) Thus offered evidence means "[e]vidence presented by a party on the trial of an action." (Ballentine's Law Dict. (3d ed. 1969) p. 881, col. 1.) Consequently, the phrase "offered in evidence" infers an evidentiary use of the material as opposed to its mere production. (*United States* v. *Bennethum* (D.Del. 1957) 21 F.R.D. 227, 231.) As Wigmore explained, an offer of evidence is "ordinarily made by the counsel's oral calling of a witness or a presentation of a document or by the counsel's oral statement of a question to a witness." (1 Wigmore, Evidence (Tillers rev. 1983) § 17, pp. 758-759, fn. omitted.) Its primary mission "is to inform the parties at trial and the trial court of the nature of the evidence that the proponent plans to introduce, so that opposing parties may lodge an objection and the trial court may make an informed ruling on any objection made." (1 Wigmore, *supra*, at p. 758, fn. 3.) Such an offer plays the same role in any other evidentiary hearing arising in the course of any proceeding, inquiry or investigation.

By its terms, section 132 is not limited to trials; it applies to any "proceeding, inquiry, or investigation whatever." The statute nonetheless contemplates that whatever the nature of the investigation or inquiry it be sufficiently formal to permit the introduction of evidence. "Each of these statutes [§§ 132, 133, 134, 136, 137, and 138] reflects the legislative purpose of protecting the integrity of evidence in *pending formal* proceedings." (*People* v. *Fields, supra,* 105 Cal.App.3d at p. 345, fn. 3, italics added.) Thus, for example, section 132 would apply to forged evidence offered in evidence during a hearing in the course of a grand jury investigation (§§ 914.1, 915, 920) or in the course of a coroner's inquiry. (Gov. Code, § 27491.6 et seq.) And, of course, it would apply to evidence offered at a hearing conducted by the Fair Political Practices Commission. (Gov. Code, § 83116.) On the other hand, it would not apply when no evidentiary hearing is in progress. Thus, section 132 would not apply when a forged document is given to a police officer conducting a routine criminal investigation.

The phrase "offers in evidence" presupposes the existence of some forum in which the proffered evidence may be received. It means to submit a document for introduction into the official record of some formal, pending proceeding, inquiry or investigation of any kind which is authorized or permitted by law. The phrase is inextricably linked with the concept of admissibility. To admit a document offered in evidence means that the presiding officer formally accepted it and made the document a part of the official record. But one cannot offer a document in evidence when no hearing is being conducted. One can produce it, deliver it, mail it or otherwise

transmit it to an investigating agency or officer without a hearing but one cannot offer it in evidence when no evidentiary hearing is under way. Just as an offer without an acceptance is not a contract, the tender of a document without a hearing is not an offer in evidence.

The majority's construction of the statute as applying to all deliveries of forged documents during an investigation is also inconsistent with the evil sought to be suppressed by the Legislature. The gravamen of the crime of offering false evidence is the representation that the document is "genuine or true" when the proponent knows "the same to have been forged or fraudulently altered or antedated." (§ 132.) That representation inevitably occurs when the defendant knowingly offers the forged document in evidence by presenting it for use during the hearing. In contrast, the mere delivery of a document to an investigating official, unlike an offer in evidence, says nothing about its genuineness. Moreover, the implicit restriction of the offense to evidentiary hearings ensures that the forged document has some relevance to the proceeding and is meant to influence its outcome. Under the majority's construction, any known forged document delivered to some investigating official trolling on a fishing expedition would violate the statute, even if it had no conceivable relevance to the authorized investigation. Without the moorings of an actual evidentiary hearing, the statute would drift away from its intended purpose of prohibiting the falsification of evidence.

There are even more compelling constitutional reasons why the majority's construction of the statute ought to be rejected—reasons anchored in the dilemma of imprisonment or coerced self-incrimination. The defendant in this case was compelled to produce the forged corporate documents under compulsion of subpoenas. The first horn of the dilemma is that the willful failure to comply with the subpoena would subject the recalcitrant custodian to contempt and imprisonment. (Gov. Code, § 83118; Code Civ. Proc., § 1991; §§ 166, subd. 4, 1331.) On the other horn, the custodian of subpoenaed corporate records may not refuse to produce them on the ground they might incriminate him. (*Brashwell* v. *United States* (1988) 487 U.S. 99 [101 L.Ed.2d 98, 108 S.Ct. 2284].) Under the doctrine known as "the collective entity rule," the high court recently reiterated, "for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals." (*Id.,* at p. 104 [101 L.Ed.2d at p. 106].) Consequently, a "corporate custodian . . . may not resist a subpoena for corporate records on Fifth Amendment grounds." (*Id.,* at p. 109 [101 L.Ed.2d at p. 108].) Given the Hobson's choice imposed by the majority, the custodian may either refuse to comply with the subpoena and face imprisonment for contempt or comply and thereby commit the crime of offering forged evidence in violation of section 132. Either way the hapless

custodian in defendant's shoes faces imprisonment. This "jailed if you do and jailed if you don't" construction of the statute is repugnant to elementary notions of due process. To circumvent this predicament the Attorney General suggests that the custodian could, at the time of delivering the forged corporate documents, truthfully declare that they are forged. But this is no answer to the constitutional dilemma. This suggested variation on the theme would simply be another form of coerced self-incrimination; the custodian could avert committing one crime only by incriminating himself in another.

In a footnote, the majority sweeps away these constitutional concerns on the procedural ground that defendant waived any self-incrimination claim by not objecting. This misses the point of my objection to the majority's construction of the statute. Such a quibble adds nothing to the constitutional dialogue for it is meaningless to say that the subpoenaed custodian should have lodged a frivolous self-incrimination objection. Under the definitive interpretation of the right against self-incrimination by the United States Supreme Court, the custodian of corporate records simply has no Fifth Amendment right to refuse to produce the records. (*Brashwell* v. *United States, supra,* 487 U.S. at p. 105 [101 L.Ed.2d at p. 106].) Thus, the dilemma remains the same whether or not the custodian tenders an untenable Fifth Amendment objection. The central point of my objection is that we should not construe a criminal statute in such a way that it subjects the actor to criminal sanctions no matter what he does.

There remains a final constitutional impediment, indeed the coup de grace, to the majority's position. Its interpretation of the statute under the facts of this case is wholly inconsistent with the construction required by settled Fifth Amendment principles. "From *Wilson* [v. *United States* (1911) 221 U.S. 361] forward, the Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity. Artificial entities such as corporations may act only through their agents, and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the Government. Under those circumstances, the custodian's act of production is not deemed a personal act, but rather an act of the corporation. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege." (*Brashwell, supra,* 487 U.S. at p. 110 [101 L.Ed.2d at p. 109], citation omitted.) It follows from this overriding Fifth Amendment doctrine that if anyone committed a violation of section 132 it was the corporation, Pereira-Stathos, Inc., and not its individual agent, defendant Frank A. Pereira. Thus, as a matter of constitutional law, defendant did not offer anything;

the corporation merely produced the records as commanded. The imposition of criminal liability upon the corporation's agent under the circumstances of this case irreconcilably conflicts with settled Fifth Amendment jurisprudence.

Quite apart from these constitutional constraints, the majority's construction of the statute, given the long established meaning of an offer in evidence as a tender for admission in an evidentiary hearing, violates the statutory command to construe words according to their "peculiar and appropriate meaning." (§ 7, subd. 16.) And this is just the first of several misapplications of the rules of statutory construction of criminal statutes.

It is also a well recognized rule of statutory construction that when different terms are used in related statutes it is presumed that different meanings were intended by the Legislature. (See e.g., *Las Virgenes Mun. Wat. Dist.* v. *Dorgelo* (1984) 154 Cal.App.3d 481, 486 [201 Cal.Rptr. 266].) As defense counsel correctly notes, to adopt the majority's construction of the statute "is to read the precise legal term 'offers in evidence' out of the statute and to interpret that language as synonymous with 'production.'" Neither the majority nor the Attorney General has explained why the Legislature would have used the technical phrase "offers in evidence" if it had just meant "produces." If the Legislature had intended the statute to cover the mere production of false documents it would have used that term, as it did in the crime of preparing false documents to be "produced" at a trial, proceeding or inquiry. (§ 134.)

Finally, and most critically, the majority's construction violates a fundamental rule of statutory construction of penal statutes. Although I think it clear that a mere delivery of documents is not an offer in evidence, at worst the statute is ambiguous. Thus, even if we were to assume that the reading urged by the Attorney General and adopted by the majority was grammatically possible, long settled principles would nevertheless compel a reading in the manner most favorable to the defendant. "'[W]hen language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is most favorable to the offender will be adopted. [¶] The defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.'" (*People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186], citation omitted.) It is true that this "canon entitles the defendant only to the benefit of every *realistic* doubt." (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1145 [240 Cal.Rptr. 585, 742 P.2d 1306], italics in original.) But if ever a doubt can be said to be real, this is it. This defendant, like any other accused person, is

entitled to the most favorable construction of the statute. For all these reasons, I would affirm the order of dismissal.

A petition for a rehearing was denied March 3, 1989, and respondent's petition for review by the Supreme Court was denied May 17, 1989.