[Crim. No. 68. Fourth Appellate District.—August 23, 1932.]

THE PEOPLE, Respondent, v. W. DONALD WIGNALL, Appellant.

Raymond E. Hodge for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

MARKS, Acting P. J.—In an information filed by the district attorney of San Bernardino County appellant was accused of the crimes of (1) forging the will of Charles Wellington Scott, deceased; (2) causing the forged will to be filed of record in the office of the county clerk of San Bernardino County; and (3) offering the forged will in evidence in a probate proceeding entitled, "In the matter of the Estate of Charles Wellington Scott, deceased." In an amended information, in addition to these three accusations, appellant was charged with two prior convictions of felonies which he admitted. He was found guilty on all three counts of the information and is here on appeal from the judgment and from the order denying his motion for new trial.

468

Charles Wellington Scott and appellant had been friends for several years. Scott had come to California because of ill health. He first lived with a relative near Owensmouth in Los Angeles County, later moving to the town of Cucamonga, where he purchased a residence, he and appellant living there together until January 3, 1931, when Scott was removed to a hospital in Los Angeles. He died January 16, 1931.

Appellant caused to be filed in the office of the county clerk of San Bernardino County, and offered for probate, a purported olographic will of deceased dated January 2, 1931. It was admitted to probate on March 2, 1931, and letters testamentary issued to appellant. While the record is not clear upon this point, it would seem that a contest was later instituted and probate of the questioned will denied upon the ground that it had not been wholly written, dated and signed in the handwriting of the testator. This prosecution followed, with the results which we have indicated.

■ After the jury had been impaneled and two witnesses had testified, the district attorney offered in evidence the olographic will of January 2, 1931. Counsel for appellant objected to its admission because of a variance between the will and the copies set forth in the information. The district attorney asked and was given leave to file an amended information correctly setting forth the purported olographic will. There was no error in this ruling, as the amended information merely corrected typographical errors in the copies set forth in the first information. Appellant was not misled nor prejudiced by the amendments. Furthermore he was granted time in which to prepare and continue his defense. This procedure is now authorized by law. (Sec. 1008, Pen. Code; *People* v. *Jensen*, 82 Cal. App. 489 [255 Pac. 781] ; *People* v. *Foster*, 198 Cal. 112 [243 Pac. 667].)

■ Appellant complains of the introduction in evidence of a purported will of deceased which had been drawn on December 23, 1930, basing his objection upon the ground that it was ''incompetent, irrelevant and immaterial and as having no bearing upon any of the issues of the case''. In view of the state of the record at that time, this objection was correctly overruled by the trial judge. The information charged that the will of January 2, 1931, was forged by appellant with the intent to defraud Lorraine Beulah

Scott, the daughter, and Robert Johnson, the brother of deceased. The will of December 23d made several specific bequests, among which was one to Robert G. Johnson, the same person as Robert Johnson. It also contained a residuary clause dividing the remainder of his estate ''among all the heirs'', which would include his daughter as a residuary legatee. The olographic will of January 2d bequeathed to Robert G. Johnson $100 and a gold watch, much less than he would have received under the former will, and left nothing to the daughter. It was a part of the People's case to prove, as alleged in the information, that the forgery of January 2d was committed with the intent to defraud the half-brother and the daughter. The will of December 23d was typewritten. It had been prepared by Barbara Wentworth and witnessed by herself and Mrs. J. M. Chadwick. If properly executed and entitled to probate it became material to prove the terms of this will which was revoked by the forged will in order to prove the intent to defraud.

Miss Wentworth was called as a witness in the court below. From her testimony it was apparent that the will had been properly executed and was entitled to probate. It was then offered and admitted in evidence. Later Mrs. Chadwick was called and testified that she did not sign the will in the presence of deceased nor at his request and that he did not declare to her that it was his last will. Under this testimony, if taken as true, as it seems to have been by all counsel in the court below, the will had not been duly executed and could not be probated. We have carefully searched the extensive record and cannot find that appellant moved upon any specific ground to strike the will of December 23d from the record. In fact during the later days of the trial, in commenting on its introduction in evidence, counsel for appellant said: ''It is hearsay, nothing but hearsay, yet I think it is proper hearsay testimony because it goes to a state of mind of the decedent.'' Again speaking on the same subject, he said: ''Technically, I think my objection was wrong, . . . first it (the earlier will) is a part of the *res gestae,* and second, that it shows a state of mind of the deceased.'' This shows an abandonment in the court below of the objection to the introduction of the will of December 23d and for that reason the overruling of the objection should not be urged as error here.

■ Appellant complains of the refusal of the trial court to permit him to introduce in evidence a typewritten letter dated December 14, 1930, addressed to him and which he maintains was written and signed by the deceased. The letter is not in the record and in its absence we cannot determine its materiality nor whether or not its rejection was error. We cannot presume error. The record on appeal must make error appear affirmatively.

■ Appellant complains of several rulings of the trial court whereby evidence of the friendly and cordial relations between himself and deceased, the confidence and trust reposed in him by deceased, and the services which he performed for deceased, was excluded. Even if we assume these rulings erroneous they were not prejudicial. There is ample evidence in the record to show these relations, and the time, care and attention which appellant gave deceased. The evidence excluded was cumulative of testimony amply showing these relations which were not denied by the People.

■ Appellant complains of a ruling of the trial court in refusing to strike the testimony of R. G. Johnson, the half-brother of deceased, that Lorraine Beulah Scott was the daughter of deceased and lived at Corona, New York. The witness was permitted to testify to these facts on direct examination without objection. On cross-examination it was developed that he had never seen the daughter. He had seen her picture and had received a telegram from her after her father's death. Appellant moved to strike this testimony on the ground that it was hearsay. This motion was denied. Appellant did not develop any evidence to show that the testimony sought to be stricken was not based on "a declaration, verbal or written" of the deceased. (Sec. 1870, Code Civ. Proc.; *Estate of Paulsen*, 179 Cal. 528 [178 Pac. 143].) There is other evidence in the record to establish the fact that Lorraine Beulah Scott was the surviving daughter of deceased. It is to be found in the testimony of appellant and in his petition to probate the will of January 2d.

■ Appellant bitterly complains of the admission in evidence of testimony of a deputy district attorney detailing conversations between the deputy and appellant, and also of testimony of a justice of the peace as to one of these conversations. The evidence of the deputy district attorney

contains the following: "Q. And during the course of that investigation did you have a conversation with the defendant, W. Donald Wignall? A. Yes, sir. Q. Where was that conversation? A. The first conversation was in the office of Mr. Mussell, the District Attorney, on November 16th, 1931. Q. Who was present? A. Mr. Wignall, the defendant; Mr. Mussell, the District Attorney; Deputy Sheriff Locke and myself. Q. Will you please state what that conversation was? Mr. Hodge: Objected to on the ground no proper foundation has been laid. Mr. Weller: It does not call for a confession, your Honor; it calls for the conversation and acts of the parties in respect to the conversation in question. The Court: Very well; on the representation of counsel the objection is overruled. A. Mr. Wignall had been arrested on Thursday, November 12th, and I had brought him down into the District Attorney's office on November 16th, the following Monday, Monday afternoon, about 3 o'clock in the afternoon. As soon as Mr. Wignall was brought in, I told him to sit down in a chair and I said, 'You understand, Mr. Wignall, a complaint had been filed in the Justice Court here in San Bernardino charging you with forging a will. We have not gone into the complete facts of the case as yet; we are just beginning to go to work on the case, and I want to talk to you about the matter, and if you will assist us in determining just what the facts are in connection with the case. We have no desire to prosecute you, or to take any action against you, if you are not guilty, and there is no one that can help us to better determine your guilt or innocence than you can, and we haven't at this time very much of your handwriting, and if you will give us some of your handwriting, it will be a very easy matter to determine whether you are guilty or innocent of the forging of this will.' I said, 'Have you an attorney?' And he said, 'I am making some arrangements; I have not any yet.' I said, 'If you have an attorney, I want him to be here.' I said, 'Understand we are investigating this criminal charge against you. Are you willing to help us as much as you can?' He said, 'What do you want?' I said, 'I will tell you what I will do. If you will sit down here at the desk and write out in your own handwriting the contents of this will, and allow us to submit that to a handwriting expert to determine whether

you are guilty or innocent, that will assist us a great deal in determining whether you are guilty or innocent in the matter.' He said he didn't care to do that. I said, 'I will tell what I will do further. Clark Sellers is the handwriting expert employed by you in the will contest. I will go this much further, if you will write this will out in your own handwriting and allow us to submit the matter to Mr. Sellers—' Mr. Wissburg: We object to this testimony. It is an attempt at least to lead up to a confession of some sort, an attempt to get the handwriting which will be used against a party if the handwriting met the conditions required by Mr. King. Mr. King: I will lay the proper foundation. At the time he was in our office on this particular conversation and discussion, there was no force of any kind used against Mr. Wignall. There was no promise of immunity. Mr. Wissburg: Object to that line of testimony. The Court: Objection overruled. A. There was no promise of immunity or reward of any kind made to him. Everything that he said and everything that was done in that conversation was free and voluntary upon the part of Mr. Wignall. With that foundation I will proceed with the conversation I had with him. Going back a little bit—I said to Mr. Wignall, 'If you will sit down here and write out in your own handwriting the contents of this will, we will submit the handwriting to Mr. Clark Sellers of Los Angeles, and if he will give us an opinion that that handwriting and that will is not your handwriting, we will dismiss the case immediately and you will be released.' Mr. Wissburg: We further object on the ground that he did offer a reward or promise. Out of counsel's own mouth he condemns himself. He states he said, 'If you will do certain things we will do certain things,' and it comes within the exception of the rule as applied to this particular line. Mr. Weller: That could not possibly be considered a reward in the sense it is mentioned in the Penal Code. Mr. Wissburg: It was an inducement, if he would write out those things, 'We will do certain other things.' The Court: That is not the proposition. If he would write out a copy of the will in question, the same to be submitted to Mr. Sellers, and Mr. Sellers pronounced the will not in the handwriting of defendant, the case would be dismissed. Mr. Wissburg: We submit this is an inducement for the purpose of getting him to

write out the will, and if perchance there might be some resemblance he would either be dismissed or prosecuted. It comes absolutely within the rule. The Court: Objection overruled. A. He refused to do that. I said, 'Mr. Wignall, I will make one more proposition to you. If you will sit down here and write out in your own handwriting the contents of that will, we will submit that handwriting to any three recognized handwriting experts in the state, we will allow you to pick the experts, and the state will pay the bill for the investigation and it will cost you nothing, and if any one of those three experts say it is not in your handwriting, we will release you and dismiss the case.' He refused to do it. He said, 'If you will put that down in black and white, in writing, I might do it.' I said, 'You know mighty well if we tell you here we will do that, we will do it; and furthermore, there are too many witnesses for us to back up on a proposition of that kind.' He absolutely refused to do it. By Mr. Weller: Did you later have another conversation with Mr. Wignall concerning the same subject matter? A. Yes. The next day I was in the Justice Court before Judge Holbrook in the morning around nine or ten o'clock, and at the conclusion of the hearing that took place there at that time, Mr. Wignall, in an informal way—court had adjourned, and Mr. Wignall and myself and the Judge and the reporter were around the Judge's desk, and Mr. Wignall was proclaiming his innocence, and I said 'Judge, I will tell you the proposition I made to him and see what you think about it.' At that time there was no promise of immunity and no threats, and everything that was done was done freely and voluntarily. I said, 'Judge, here is the proposition I made to Mr. Wignall, and I make the proposition to him again at this time in your presence.' I said, 'Mr. Wignall, if you will stand here before the Judge and write in your own handwriting the contents of this will, we will have myself, the Judge, or yourself, submit that to your own handwriting expert, Mr. Sellers, that you employed in the will contest, and if Mr. Sellers will give us an opinion that that will is not in your handwriting, I will ask the court right now to dismiss the case upon Mr. Sellers' opinion.' He said, 'You will not put that in writing?' And I said, 'Here is the court reporter that can take down everything I say,' and I said to the reporter,

'You take down exactly what I say,' and I said, 'I will say it to you again.' I said, 'Mr. Wignall, if you will give me the contents of this will in your handwriting, and you pick any three handwriting experts in this state, I don't care who they are, I will let you do the picking, and I will let your attorney take the writing and submit it to those experts, and if any one of these three say this will is not in your handwriting, we will dismiss the case and release you at once, and I will now ask the judge to release you upon the receipt of an opinion from any one of those handwriting experts that this will is not in your handwriting.' Judge Holbrook then took it up and said, 'Anything the District Attorney's office says in that respect I know they will carry out, and if they don't, I will, and if Mr. King won't do it, the Court will see that this case is dismissed upon that condition.' And Mr. Wignall turned around and backed out, and said he wouldn't do it.''

A study of the testimony quoted leaves the strong impression that at the time of these conversations the deputy district attorney was not satisfied as to the probable guilt of appellant, and to assist in the investigation of the charges then pending in the justice's court, wanted to secure a copy of the will in appellant's handwriting. We know of no rule of law that would require the appellant to copy the will under the circumstances existing at that time. He had not then offered himself as a witness in his own behalf. (*People* v. *Chapman,* 55 Cal. App. 192 [203 Pac. 126]; *People* v. *Mayen,* 188 Cal. 237 [24 A. L. R. 1383, 205 Pac. 435]; secs. 688, 1323, Pen. Code.) It should be observed that on at least one of the two occasions on which the conversations were had, ''Mr. Wignall was proclaiming his innocence.'' Where a defendant denied his guilt accusatory remarks made in his presence are not admissible for any purpose. (*People* v. *Lapara,* 181 Cal. 66 [183 Pac. 545]; *People* v. *Goltra,* 115 Cal. App. 539 [2 Pac. (2d) 35]; *People* v. *Ayhens,* 16 Cal. App. 618 [117 Pac. 789].) The testimony of the district attorney should not have been offered in evidence. (*People* v. *Teshara,* 134 Cal. 542 [66 Pac. 798]; *People* v. *Goltra, supra.*) Counsel for appellant did not make his objections to this testimony upon proper grounds. The trial court is entitled to have the precise legal ground of the objection to evidence specified in the objection as, ''The efficacy of an

objection, as a general rule, depends upon the precision with which it is made." (8 Cal. Jur., sec. 517, at p. 503.) "The defendant is deemed to have waived all grounds of objection not stated by him." (*People* v. *Sellas,* 114 Cal. App. 367 [300 Pac. 150, 155].)

We have carefully examined the entire record and find that there is ample evidence to support the verdicts of guilty under the first two charges in the information. The evidence of appellant and that of Mrs. Marie Budd, one of his principal witnesses, tends strongly to support the judgment on these counts. They both testified that they were familiar with the handwriting of the deceased and that they had never seen any of his handwriting that looked anything like that of the forged will.

There is no merit in any of the other contentions of appellant relating to the two charges of forging the will and offering it to be filed in the office of the county clerk. There has been no miscarriage of justice in the conviction of appellant under these two charges.

There is no evidence in the record sustaining his conviction on the third count wherein he is charged with offering the forged will in evidence in the probate proceeding. This is not mentioned in the testimony of any witness and is not covered by any admission or stipulation of counsel. A copy of the forged will is before us. It contains no indorsement which would even tend to indicate that it had ever been introduced in evidence in any probate proceeding. Its only indorsement is "Filed Feb. 16, 1931 Harry L. Allison Clerk By M. L. Aldridge, Deputy." This is the date it was filed with the petition for its probate. This date is material under the second charge of filing, but not under the third, of offering it in evidence.

The judgment under the first two counts of the information and the order denying the motion for new trial under those two counts are affirmed. The judgment under the third counts whereby appellant was adjudged guilty of offering the forged will in evidence in the probate proceeding is reversed, with directions to the trial court to proceed with a new trial on this count if the district attorney of San Bernardino County be so advised.

Jennings, J., and Harden, J., *pro tem.,* concurred.