Filed 8/28/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KENNETH GALLARDO,<br><br>        Defendant and Appellant. | A141550<br><br>(San Mateo County<br>Super. Ct. No. SC078627A) |

## INTRODUCTION

After Defendant Kenneth Gallardo stopped paying court-ordered child support for nearly a year, his ex-wife sought an income withholding order. In an effort to thwart her efforts, defendant requested a court hearing to set aside the wage assignment. At the hearing, he denied he was behind on his child support payments, and held up a sheaf of fraudulent papers that he described to the court as cancelled checks and other documents that proved he owed no money. He handed the documents to his disbelieving ex-wife and the Department of Child Support Services attorney at the hearing, who both expressed suspicion about the legitimacy of the documents. The family court denied defendant's request without prejudice, finding "insufficient evidence" to set aside the wage assignment. A few weeks later, defendant pressed his claim at the Department of Child Support Services office, once again providing it with fraudulent documents to review.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part B of the Discussion section.

1

Defendant was convicted of two counts of offering forged and fraudulent documents into evidence in violation of Penal Code section 132,[1] and one count of forgery under Penal Code section 470, subdivision (b). He does not challenge the forgery conviction. He appeals his convictions under section 132 on the grounds that the evidence was insufficient as a matter of law because he did not offer the forged checks "in evidence" within the meaning of the statute, and the jury instruction on section 132 was erroneous. In the published portion of this opinion, we hold that the evidence was sufficient to support defendant's convictions under section 132. In the unpublished portion of this opinion, we reject defendant's challenge to the jury instruction.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are essentially undisputed. Defendant and Jane Parrish were divorced in 2001, and defendant was ordered to pay Parrish monthly child support for their two children. In November 2010, defendant stopped making the payments, and would not respond to Parrish's inquiries about the missing payments.

Parrish went to the San Mateo County Department of Child Support Services (DCSS) in September 2011 for help. After Parrish submitted proof that defendant had not paid child support since November 2010, DCSS took steps to have an order sent to defendant's employer to withhold his wages and assign them to pay child support. Defendant responded by filing a request for a hearing in superior court to set aside the wage assignment order.

A hearing on defendant's request was held in San Mateo County Superior Court on January 12, 2012. Defendant, Parrish, and Eric Tannenwald, a DCSS attorney, were present. Parrish told the commissioner that she had not been paid child support since October 2010, and Tannenwald supported her contention. The commissioner asked defendant, "Anything you want to say . . . in addition to what Miss Parrish or Mr. Tannenwald has indicated to the court?" Defendant responded by holding up some documents and stating: "Yes, Your Honor. I have copies of the cancelled checks, and I

---

[1] All further unspecified statutory references are to the Penal Code.

apologize, in going through this I realized that I am missing a month, but basically from the November 2010 to November 2011, and I have been faithfully paying my child support ever since the initial order was sought by Miss Parrish. And again, I see no reason for the state and the county to waste their resources on this when in fact it is being paid."

Defendant handed the documents to Tannenwald. They included purported copies of the cancelled checks that defendant had referenced, and statements from defendant's credit union purporting to show the checks had been cashed. Tannenwald told the commissioner: "Your Honor, he provided copies of the front of the check, looks like a back of a check with the same signature, but what I would typically see in reviewing these, in the courts of my practice, are some notations from the bank, specifically clearing numbers and things like that, the posting banks." Parrish also reviewed the checks provided by defendant. She told the commissioner: "I have never received these checks, I did not sign them, and suspiciously it is the exact same signature printout, exact same thing. Looks like he photoshopped it."

The commissioner denied defendant's request to set aside the wage assignment without prejudice, finding there was "insufficient evidence today to go forward with [the request]." The commissioner told defendant that "if you want to go to DCSS and show them documentation that you have been making timely payments, you can re-file, and I will take it up again then."

A few weeks after the January 12 hearing, Tannenwald wrote to defendant asking if he wanted an administrative review to contest the arrears. DCSS was authorized to conduct such an administrative review by Family Code section 17526, subdivision (a). As part of its review, DCSS was required to "consider all evidence and defenses submitted by either parent on the issues of the amount of support paid or owed." (Fam. Code, § 17526, subd. (a).)[2]

_____

[2] Family Code section 17526, subdivision (a), states: "Upon request of an obligor or obligee, the local child support agency shall review the amount of arrearages alleged in a statement of arrearages that may be submitted to the local child support agency by an

3

On February 29, 2012, defendant went to DCSS's office and met with Blanca Velasquez, a DCSS case worker. Defendant gave her copies of the same cancelled checks that he had provided Tannenwald during the January 12 hearing, plus copies of what were supposedly three more cancelled checks from December 2011, January 2012, and February 2012, and about a year's worth of statements from defendant's credit union. According to Velasquez, defendant "requested an administrative review" of the child support issue by DCSS as soon as possible.[3]

Tannenwald wrote a letter to defendant the next day confirming that DCSS received the documents defendant provided and would "begin an administrative review and provide copies to Ms. Parrish for verification." Tannenwald forwarded copies of the documents to Parrish. Parrish told Tannenwald that she believed the documents were fraudulent and that she had still not received child support payments.

Tannenwald, on behalf of DCSS, filed an Order To Show Cause in the superior court seeking a judicial determination of child support arrears owed by defendant. A hearing was noticed for May 31, 2012. Tannenwald also took steps to have a subpoena issued to defendant's credit union for copies of the checks and bank statements that defendant said proved he had paid child support.

Defendant moved to quash the subpoena. A hearing on defendant's motion to quash was held on May 15, 2012. Defendant argued that disclosure of his financial information would violate his privacy rights. He also told the court: "I have provided copies of the cancelled checks as they've requested. I've provided copies of the clearance numbers. I've provided copies of bank statements showing the pertinent

applicant for child support enforcement services. The local child support agency shall complete the review in the same manner and pursuant to the same timeframes as a complaint submitted pursuant to Section 17800. In the review, the local child support agency shall consider all evidence and defenses submitted by either parent on the issues of the amount of support paid or owed."

[3] Defendant later testified that he "[didn't] believe [he] demanded an administrative review," but "remember[ed] asking Ms. Velasquez if these documents would allow her to make a decision about whether or not to release the levy on my bank account."

4

information. . . . [¶] And Ms. Parrish has not provided anything, any legal basis or expert testimony to say that what I have provided is not correct. She has not provided any bank statements of her own to refute that, that she has been paid." The court denied defendant's motion to quash.

Later that same day, defendant used a credit card to pay the full amount of child support he owed Parrish. Defendant informed Tannenwald the next day that he paid the missing child support, and requested that DCSS withdraw the subpoena and take the upcoming May 31 hearing off calendar. Tannenwald conveyed defendant's request to Parrish, but she refused to agree.

Prior to the May 31 hearing, defendant's credit union responded to the DCSS subpoena with a declaration stating that the checks had never been presented and never cleared defendant's account. Defendant failed to appear at the May 31 hearing. The court found that defendant had not paid child support from November 2010 until May 2012, as reflected in the DCSS audit.

Defendant was charged with two counts of offering forged or fraudulent documents into evidence in violation of section 132. Count 1 was based on the documents defendant brought to the January 12 hearing. Count 2 was based on the documents defendant provided to DCSS on February 29. Defendant was also charged with forgery (§ 470, subd. (b); count 3).[4]

Defendant testified at the jury trial in this matter and admitted that he did not pay child support to Parrish during the contested period. He admitted he falsified the checks and bank statements that he brought to the January 12, 2012, hearing and provided to DCSS on February 29, 2012. Defendant denied that he was trying to defraud Parrish out of child support payments. He testified that "[i]t was only my intent to stall DCSS from, you know, putting liens on my bank account or taking away my licenses. . . . [¶] . . . I just merely wanted to buy some time and have them asking questions rather than liening [sic]

---

[4] Defendant was also charged with grand theft, but this count was dismissed before trial at the request of the prosecution.

5

my bank account or anything like that." As to why he did not use his credit card to pay child support prior to May 15, 2012, defendant testified that May 15 was when he first learned he could use a credit card to pay child support.

Defendant was convicted on all three counts and placed on three years supervised probation with terms and conditions that included, as to count 3, that he serve one year in the county jail.[5]

Defendant timely filed a notice of appeal.

## DISCUSSION

A.      *The Evidence Was Sufficient to Convict Defendant of Violating Section 132.*

1.      *Standard of Review*

Section 132 was enacted in 1872 and has never been amended. It provides: "Every person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently altered or ante-dated, is guilty of a felony."

Defendant contends that due process requires reversal on counts 1 and 2 because the prosecution's evidence was insufficient as a matter of law to prove his guilt. Defendant argues that "[a] violation of section 132 occurs when a defendant 'offers into evidence,' false evidence," and that, as to count 1, he never actually offered the fraudulent checks and bank statements into evidence during the January 12 hearing. As to count 2, he contends that his "mere delivery of the false documents to DCSS also did not constitute " 'offer[ing] into evidence' " those documents within the meaning of section 132." Separately, he argues that there was "no evidence [he] knew that any such proceeding was taking place," referring to the administrative proceeding regarding his delinquent child support payments.

The Attorney General argues that the evidence was sufficient to convict defendant on count 1 because, even though defendant did not formally move documents into

---

[5] The trial court stayed execution of the county jail sentence pending this appeal.

evidence during the January 12 hearing, he used them in an attempt to persuade the court that he had paid the missing child support payments. As to count 2, the Attorney General argues that the evidence was sufficient to show that defendant offered the fraudulent documents in evidence on February 29 by providing them to DCSS because his production was in connection with an administrative review of the missing child support payments. The Attorney General also argues that there was substantial evidence that defendant knew DCSS would be conducting an administrative review and that, in any event, defendant's knowledge of an administrative review is not an element of section 132.

A state court conviction violates due process if it is not supported by sufficient evidence. (*People v. Rowland* (1992) 4 Cal.4th 238, 269.) "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) "We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility. [Citation.]" (*Ibid.*) To the extent a challenge to the sufficiency of the evidence is based on the interpretation of a statute, our interpretation of the statute is de novo. (*People v. Hassan* (2008) 168 Cal.App.4th 1306, 1313.)

2. *Construction of the Phrase "Offers in Evidence"*

The phrase "offers in evidence" in section 132 has been construed by courts only sporadically. One of the earliest cases was *People v. Wignall* (1932) 125 Cal.App. 465, where defendant was convicted of violating section 132 after he filed a false will in a probate proceeding. The appellate court reversed the conviction, holding the evidence

7

was insufficient to show he offered the will in evidence during the probate proceeding, although the court did not discuss the phrase "offers in evidence" in much detail. (*Id.* at p. 475.) The court simply stated that the false will "is not mentioned in the testimony of any witness and is not covered by any admission or stipulation of counsel. . . . It contains no endorsement which would even tend to indicate that it had ever been introduced in evidence in any probate proceeding." (*Ibid.*) Although the evidence was insufficient to convict defendant of offering the false will in evidence, the court held it was sufficient to convict defendant under a different statute for filing the false will with the clerk's office. (*Ibid.*)

In *People v. Hooper* (1935) 10 Cal.App.2d 332, defendant was convicted of violating section 132 based on his use of a falsified check in a civil trial to show that he did not owe rent. (*Id.* at pp. 333-334.) Defendant argued on appeal that the evidence was insufficient to show that he offered the falsified check in evidence during the civil trial because it was never formally introduced into evidence. (*Id.* at p. 334.) The court disagreed, stating: "It is true that the record does not disclose that the check was ever marked as an exhibit in the civil case, and the court reporter at that trial could not discover from his notes that it was ever formally introduced in evidence. But the check was produced in the municipal court by appellant's attorney, appellant there testified as to the check and the disputed endorsement, it was marked for identification, was examined by the court and was the subject of expert testimony and legal argument. We are of the opinion that such use of the document constitutes an offering in evidence within the meaning of the section." (*Id.* at pp. 334-335.)

In *People v. Horowitz* (1945) 70 Cal.App.2d 675, defendant was convicted of forgery of a will (§ 470), causing a forged will to be filed (§ 115), preparing a false and antedated will (§ 134), and offering in evidence a forged will (§ 132). (*Id.* at p. 684.) The charges were based on defendant's actions in connection with the purported will of his late mother. (*Ibid.*) He argued on appeal that the evidence was insufficient to sustain his convictions. (*Ibid.*) In the brief discussion pertaining to section 132, the court concluded the evidence was sufficient to convict defendant because "[h]e offered [the

will] for probate. He defended a contest filed by [the decedent's husband]. He knowingly offered the forged instrument in evidence, the crime denounced by section 132." (*Id.* at p. 688.)

In *People v. Geibel* (1949) 93 Cal.App.2d 147, defendant, an attorney, was charged with forgery of a will (§ 470), causing a forged will to be filed (§ 115), and offering in evidence a forged will (§ 132), all relating to the will of a former client. (*Id.* at pp. 152-153.) Defendant was convicted on all three counts. (*Id.* at p. 152.) He argued on appeal that the evidence was insufficient to show he offered a false will in evidence in violation of section 132, because he had merely offered a will for probate by presenting it at a hearing. The court disagreed, and summarized the evidence supporting defendant's conviction: "[A]t the hearing on the petition for admission to probate of the will, [defendant] appeared not only as one of the attorneys for the petitioner, but there testified as to the execution of the will and the genuineness of the disputed signature of the testator. The document was examined by the court, and was the subject of expert testimony and legal argument." (*Id.* at pp. 169-170.) The court concluded: "[w]e are persuaded that such use of the instrument constitutes an offering in evidence within the meaning of the code section (*People v. Hooper*, 10 Cal.App.2d 332, 334), and that the evidence was, therefore, sufficient to support the verdict and judgment on [the section 132 count]." (*Id.* at p. 170.)[6]

The meaning of "offers in evidence" was discussed at length in *People v. Pereira* (1989) 207 Cal.App.3d 1057 (*Pereira*), where defendant was charged with two counts of violating section 132. One count involved the production of a fraudulently altered loan application in response to a subpoena issued by the Fair Political Practices Commission (FPPC) in connection with its investigation of possible violations of the Political Reform

---

[6] The court reversed the trial court's judgment and order denying defendant's motion for a new trial on **unrelated** grounds, to wit, that the trial court committed prejudicial error by admitting evidence that defendant was suspended from the practice of law (*People v. Geibel, supra*, 93 Cal.App.2d at pp. 173-174), by not permitting defendant to testify about legal services he rendered for the decedent (*id.* at pp. 174-175), and by improperly instructing the jury (*id.* at pp. 177-179).

Act. (*Id.* at pp. 1061-1062.) The second count involved production of a different version of the same loan application in a civil proceeding to enforce a judgment. (*Ibid.*) Defendant had initially received a subpoena duces tecum in connection with the civil proceeding, but reached an agreement with the subpoenaing party to produce documents, including the loan application, voluntarily. (*Ibid.*) The trial court granted defendant's motion to dismiss both section 132 counts, reasoning that the "mere producing of the documents" did not amount to offering the documents into evidence. (*Id.* at p. 1063.)

The appellate court in *Pereira* reversed and held that "the scope of section 132 extends beyond those situations involving the formal introduction in evidence of documents in a court of law." (*Pereira, supra,* 207 Cal.App.3d at p. 1067.) The court construed the phrase "offers in evidence" in the context of the wide breadth of section 132, which, by its terms, applies to "any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law." (*Id.* at p. 1063.) The court determined that this phrase "bespeaks a broad range of formal as well as informal settings in which an '[offer] in evidence' may constitute a violation of the section. Viewed in this light, the phrase '[offer] in evidence' is not used in a technical sense or as a term of art." (*Id.* at pp. 1063-1064.)

In considering the loan application produced in response to the FPPC subpoena, the court held that "the tender of documents pursuant to a subpoena duces tecum issued by the FPPC constitutes an offer in evidence within the meaning of section 132 if made during a proceeding, inquiry or investigation authorized or permitted by law." (*Pereira, supra,* 207 Cal.App.3d at p. 1064.) "The subpoena duces tecum to defendant to produce the . . . loan application was issued in furtherance of such an investigation of 'possible violations' of the Political Reform Act (Gov. Code, § 83115)," and the purpose of the investigation was "to gather evidence." (*Id.* at pp. 1064-1065.) Accordingly, the court concluded that "[o]ne who in response to an FPPC subpoena knowingly submits fraudulently altered or antedated documents in such an investigation, 'offers in evidence' the documents so tendered within the meaning of section 132." (*Id.* at p. 1065.)

The *Pereira* court reached a similar conclusion with regard to the loan application produced in the civil judgment enforcement proceeding. The court reasoned that "the use of a subpoena duces tecum to discover and inspect relevant documents is an accepted practice" in civil judgment enforcement proceedings as part of an examination of the debtor's property. (*Pereira, supra,* 207 Cal.App.3d at p. 1066.) Such an examination "is similar to a trial" because witnesses are required to appear and to testify, and "[a]t the conclusion of the examination, the judge or referee may order the judgment debtor's interest in the property applied to satisfy the money judgment." (*Ibid.*) "Thus, the production of documents pursuant to a subpoena duces tecum in contemplation of a debtor's examination is an '[offer] in evidence' at a 'trial, proceeding, inquiry, or investigation . . . authorized or permitted by law. . . .' " (*Id.* at p. 1066.) "That the documents were ultimately produced pursuant to an agreement between counsel and not in direct response to the subpoena duces tecum is of no import. It would be illogical to hold criminal sanctions for offering false documents in evidence could be avoided simply by agreeing voluntarily to produce the evidence in consideration for the dropping of a subpoena." (*Ibid.*)

*Pereira* was not unanimous. The dissenting opinion in *Pereira* stated that section 132 should not extend to the "mere delivery of documents to a state functionary conducting a preliminary investigation and to an attorney seeking discovery to enforce a civil judgment." (*Pereira, supra,* 207 Cal.App.3d at p. 1069 [dis. opn. of Sparks, J.].) The dissent's view was that section 132 "contemplates that whatever the nature of the investigation or inquiry it be sufficiently formal to permit the introduction of evidence." (*Id.* at p. 1075.) Accordingly, the dissent concluded that "offers in evidence" means to "submit a document for introduction into the official record of some formal, pending proceeding, inquiry or investigation of any kind which is authorized or permitted by law." (*Ibid.*)

*People v. Bhasin* (2009) 176 Cal.App.4th 461 involved a conviction under section 132 in connection with an earlier criminal case against defendant for identity theft and securing a fraudulent loan. (*Id.* at p. 466.) In the underlying case, defendant fraudulently

11

obtained a document from the Department of Motor Vehicles (DMV), which he then gave to his attorney to use to cross-examine a witness. (*Ibid.*) When defendant's attorney finished his cross-examination, he gave the document to the prosecutor, who suspected that it was fraudulent. (*Ibid.*) After the prosecution investigated the document's authenticity, a mistrial was declared. (*Id.* at p. 467, fn. 3.) Defendant was charged and convicted in a later trial of violating section 132 for his use of the false DMV document. (*Id.* at pp. 464-465.) He appealed, arguing "there was insufficient evidence presented that he 'offered into evidence' the [DMV document] at the underlying trial to support his conviction for violating section 132." (*Id.* at p. 468.) Defendant contended that he must have actually moved the DMV document into evidence in order to be found in violation of section 132. (*Ibid.*) The appellate court rejected this argument. Quoting from *Pereira* at length, it stated that " 'offers in evidence' " should not be used " 'in a technical sense or as a term of art.' " (*Id.* at p. 468.) The court reasoned that "[t]he fact that defendant gave the [document] to his attorney, it was used in cross-examination [of a witness], it was read into the record, and it was marked for identification by defendant clearly was an offer of evidence within the meaning of section 132. The fact that the prosecution sought to move the [document] into evidence (without objection from defendant's counsel) was not imperative to a conviction of section 132. There simply is no requirement that a document must be moved into evidence in order to constitute a violation of section 132." (*Ibid.*) The court concluded that the evidence supported a finding that the document "was offered into evidence within the meaning of section 132." (*Ibid.*)

With these cases in mind, we turn to the evidence in this matter.

### 3. *January 12 Hearing (Count 1)*

Defendant argues that he did not offer the fraudulent checks and statements in evidence during the January 12 hearing because they were not provided to the commissioner or court clerk, and did not become part of the court record. The only case defendant relies on to support his argument is *People v. Wignall, supra*, 125 Cal.App. 465. As we have noted, the court in *Wignall* did not discuss the phrase "offers in

12

evidence" in any detail, but held that the evidence was insufficient to convict a defendant under section 132 when a false will was filed for probate but not mentioned in testimony or introduced in evidence during any proceeding. *Wignall* is distinguishable because in this matter, defendant made affirmative use of fraudulent documents during a court hearing. They were the centerpiece of his argument: he held up the documents and referred to them when arguing to the court, and he provided the documents to Parrish and Tannenwald. After listening to defendant explain the significance of the fraudulent documents, the commissioner concluded there was "insufficient evidence to go forward" with his request.

Defendant argues that *People v. Bhasin, supra*, 176 Cal.App.4th 461 is distinguishable because in *Bhasin*, unlike here, the fraudulent document was actually marked for identification, there was questioning and sworn testimony about the document, and the contents of the document were read into the record. We do not find this argument persuasive. Section 132, by its terms, applies to "any trial, proceeding, inquiry, or investigation whatever," which includes the January 12 family law hearing regarding wage garnishment—a hearing that defendant was authorized by law to request.[7] Although the formalities in the criminal trial in *Bhasin* and the January 12 family court hearing differ, defendant's use of the fraudulent documents at the January 12 hearing was similar to defendant's conduct in *Bhasin*. In both cases, the documents were offered in support of the merits, and their substance was described on the record for the finder of fact to consider.

Defendant argues that *Pereira, supra*, 207 Cal.App.3d 1057 is distinguishable because defendant there "affirmatively produced the documents under compulsion of law during an inquiry or investigation," which was not the case at the January 12 family court hearing. This is a distinction without a difference. Section 132, by its terms, does not require documents to be produced under compulsion of law. Nor have courts construing

---

[7] Defendant was authorized to request such a hearing by Family Code section 5246, which allows for a court hearing when a local child support agency serves an income withholding order on an obligor's employer. (Fam. Code, § 5246, subd. (b), (e).)

section 132 read in such a requirement. The defendants in *People v. Bhasin, supra*, 176 Cal.App.4th at page 466 and *People v. Hooper, supra*, 10 Cal.App.2d at page 334 voluntarily offered fraudulent documents at trial in support of their cases, and each was convicted of violating section 132. The same is true in *People v. Horowitz, supra*, 70 Cal.App.2d 675 and *People v. Geibel, supra*, 93 Cal.App.2d 147, where defendants filed false wills as part of a probate proceeding. Nothing indicates they did so under compulsion of law. (*People v. Horowitz, supra*, 70 Cal.App.2d at p. 688 [defendant "knowingly offered the forged instrument in evidence"]; *People v. Geibel, supra*, 93 Cal.App. 2d at p. 169 ["the will was offered for probate by [defendant] or at his behest"].) It would be anomalous to conclude that the defendant in *Pereira, supra*, 207 Cal.App.3d 1057 was liable under section 132 because he was compelled by subpoena to produce documents, but defendant here is not because he availed himself of court process and chose to use fraudulent documents to support his cause.

Defendant argues that "other sources of law" establish that the phrase "offers in evidence" does not extend to his conduct during the January 12 hearing. Defendant relies on section 140 of the Evidence Code, which defines "evidence" as "testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." (Evid. Code, § 140.) This definition says nothing about the meaning of the phrase "offers in evidence." Further, the false checks and statements used in court on January 12 meet the statutory definition of "evidence," because they were writings that defendant used to prove the non-existence of the allegation that he had not paid child support.

Defendant also argues that the fraudulent checks and bank statements "did not contain any of the indicia of evidence as defined in CALCRIM No. 104," which defines "evidence" as "the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else [the trial judge] tell[s] you to consider as evidence." Like section 140 of the Evidence Code, the definition in CALCRIM No. 104 says nothing about the meaning of the phrase "offers in evidence." Further, the definition in CALCRIM No. 104 is of

14

little utility in interpreting section 132 because jury instructions apply to trials, and section 132 extends to any "proceeding, inquiry, or investigation whatever."

Another "source of law" defendant relies on is California Rules of Court, rule 3.1306 (rule 3.1306), which governs the use of evidence at law and motion hearings. This rule states, in part, that "[e]vidence received at a law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown," and a party seeking to present oral evidence must seek written permission at least three days before the hearing. (Rule 3.1306(a), (b).) Defendant contends that this rule applied to the January 12 hearing, and because defendant did not present the documents in conformity with it, he could not have offered them in evidence within the meaning of section 132. Assuming, without deciding, that rule 3.1306 even applied to the January 12 hearing,[8] defendant's argument is meritless. Rule 3.1306 is not a rule of evidence or exclusion, but a rule of procedure for law and motion proceedings. A document does not lose its status as "evidence" because a party does not comply with the requirements of rule 3.1306. Further, a court may consider evidence that is not submitted in compliance with rule 3.1306 if no objection is made, or upon a showing of good cause. If rule 3.1306 even applied to the January 12 proceeding, we may assume the family court commissioner found good cause to consider the documents used by defendant. (Evid. Code, § 664.)[9]

---

[8] Defendant submitted a special jury instruction on rule 3.1306 but then withdrew his request. At defendant's request, the jury was instructed on former California Rules of Court, rule 5.119, which was in effect at the time of the January 12 hearing. That rule stated "at a hearing on any order to show cause or notice of motion brought under the Family Code, absent a stipulation of the parties or a finding of good cause . . . , the court must receive any live, competent, and admissible testimony that is relevant and within the scope of the hearing." (Cal. Rules of Court, rule 5.119 [repealed effective Jan. 1, 2013].) Like rule 3.1306, this rule is equally unpersuasive as authority that defendant did not offer in evidence false documents at the January 12 hearing.

[9] In his reply brief, defendant argues that the attorney general is interpreting "offers in evidence" broadly, but that "[c]riminal statutes should be narrowly construed." This "rule of lenity" relied on by defendant only applies when there is an " 'egregious ambiguity and uncertainty' " in the statute, and a court "can do no more than guess what

We conclude there was substantial evidence that defendant "offer[ed] in evidence" the fraudulent documents during the January 12 hearing. Defendant requested the court hearing to quash an income-withholding order. He then affirmatively used the documents in an effort to persuade the family court of the merits of his position. Defendant held up the checks and bank statements during the hearing as proof he had been "faithfully" paying child support since November 2010. He then provided the documents to DCSS attorney Tannenwald, who told the commissioner that the checks did not look like the kind he typically sees when looking for proof of child support payments. Defendant's former wife also examined the checks at the hearing and told the commissioner she "never received these checks" and that it "looks like he photoshopped" her signature onto the checks. After hearing from DCSS's counsel and the parties, the commissioner made a finding that "[b]ased on what I am hearing today . . . there has been no payment yet received," and concluded that "there is insufficient *evidence* today to go forward" with defendant's request to set aside the wage assignment order. (Emphasis added.) We agree with *Pereira* that the phrase "offers in evidence" is "not used in a technical sense or as a term of art." (*Pereira, supra*, 207 Cal.App.3d at p. 1064.) On this record, there was sufficient evidence to find that defendant had "offer[ed] in evidence" forged or fraudulent documents at the January 12 hearing within the meaning of section 132.

### 4. *February 29 Delivery of Documents to DCSS (Count 2)*

Defendant challenges his conviction on count 2 on two grounds. First, he argues that the meaning of "offers in evidence" does not extend to his delivery of documents to DCSS on February 29. Second, he argues that even if it does extend to his conduct on February 29, the evidence is insufficient to convict him because there was no evidence

---

the legislative body intended." (*People v. Avery* (2002) 27 Cal.4th 49, 58.) The rule of lenity has no application in this matter. We have not found an " 'egregious ambiguity and uncertainty' " in section 132. Nor have the other courts that have construed the meaning of "offers in evidence" in section 132.

that he "knew any kind of formal investigation would occur" when he delivered the documents to DCSS.

As to the first argument, defendant makes many of the same arguments he raised in connection with his conviction on count 1. He argues that he did not offer in evidence the fraudulent checks on February 29 because he did not produce them under compulsion of law. As we discussed earlier, whether a defendant offers evidence voluntarily is beside the point for purposes of section 132. Defendant also relies on the same "other sources of law" to argue that the phrase "offers in evidence" does not extend to his conduct on February 29. Those authorities are equally inapposite for the same reasons we have described.

Defendant relies on the dissenting opinion in *Pereira, supra*, 207 Cal.App.3d 1057 to support his argument that his delivery of documents to DCSS on February 29 was not offering into evidence those documents within the meaning of section 132. This argument is unavailing. In *Pereira* a defendant produced documents in response to a subpoena in an FPPC proceeding, and produced similar documents in response to a subpoena and informal request in a civil judgment enforcement proceeding. The dissenting justice expressed the concern that "[u]nder the majority's construction, any known forged document delivered to some investigating official trolling on a fishing expedition would violate the statute, even if it had no conceivable relevance to the authorized investigation." (*Pereira, supra*, 207 Cal.App.4th at p. 1076 [dis. opn. of Sparks, J.].) The circumstances in the matter before us have no connection to this concern. Defendant voluntarily delivered documents to DCSS and affirmatively used them to support his claim that he had been faithfully paying child support. To the extent the dissenting opinion in *Pereira* can be construed to mean that "offers in evidence" should not extend to defendant's conduct on February 29, we respectfully do not find it persuasive.

Defendant's other argument is that "[t]here was no evidence [he] knew any kind of formal investigation would occur" when he delivered the documents to DCSS on February 29. There was overwhelming evidence at trial to the contrary. At the

17

conclusion of the January 12 hearing, the commissioner told defendant that "if you want to go to DCSS and show them documentation that you have been making timely payments, you can re-file, and I will take it up again then." Tannenwald wrote a letter to defendant after the hearing, asking if defendant wanted DCSS to conduct an "administrative review" of the missing child support payments. Defendant then voluntarily went to DCSS on February 29 and provided DCSS with copies of the fraudulent checks as proof that he was paying child support. Velasquez, the DCSS caseworker, testified that when defendant provided the fraudulent checks and bank statements on February 29, he "requested an administrative review as soon as possible." She also testified that defendant demanded that DCSS "unfreeze his accounts immediately so that he could make his mortgage payment the next day." The day after defendant went to DCSS, Tannenwald wrote a letter to defendant stating that DCSS received the documents and would "begin an administrative review and provide copies to Ms. Parrish for verification." Substantial evidence establishes that defendant knew DCSS would conduct an administrative review.[10]

We thus conclude that there was sufficient evidence that defendant "offer[ed] in evidence" fraudulent checks and bank statements when he provided them to DCSS on February 29. Defendant hand-delivered the documents to DCSS in another attempt to convince DCSS that he had been paying child support. Defendant's stated goal was to stop DCSS from garnishing his wages. It is undisputed that DCSS was authorized by Family Code section 17526 to conduct an administrative review of the missing child support payments, and that DCSS was required to "consider all evidence and defenses submitted by either parent on the issues of the amount of support paid or owed." (Fam. Code, § 17526, subd. (a).) Given these circumstances, defendant's actions on February

---

[10] In any event, whether defendant knew DCSS would conduct an administrative review of the missing child support payments is irrelevant to his section 132 conviction. "The only mental element essential to a violation of section 132 is knowledge concurrent with the offer in evidence that the document has been fraudulently altered or antedated." (*Pereira, supra,* 207 Cal.App.3d at pp. 1068-1069.) Defendant's own testimony at trial establishes that he knew the documents he provided to DCSS were fraudulent.

were more than just a "mere delivery" of documents to DCSS.  He "offer[ed] in evidence" the documents as part of a proceeding authorized by law.  (§ 132.)

B.     *The Trial Court Did Not Commit Instructional Error.*

Defendant argues that the trial court erred in instructing the jury about the meaning of "offers in evidence."  We review de novo whether jury instructions correctly state the law.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

There is no CALCRIM instruction for section 132.  The trial court gave an instruction that first tracked the language of section 132, and then included a non-exclusive list of examples of what it means to "offer[] in evidence" a document under the statute.  The instruction stated, in pertinent part:

"The defendant is charged in Counts 1 and 2 with offering false evidence in violation of Penal Code Section 132.  To prove that the defendant is guilty of this crime, the People must prove, that:  [¶] One, the defendant offered in evidence as genuine or true any book, paper, document, record or other instrument in writing; two, the defendant intended to produce it, or allow it to be produced, as genuine or true upon any trial, proceeding, inquiry or investigation, whatever, authorized or permitted by law; three, the defendant knew it was forged or fraudulently altered.  [¶] The term 'offer in evidence' is not used in the technical sense. *The term 'offer in evidence' may include, but does not necessarily need to include, the following*:  [¶] Formally offering a book, paper, document, record or other instrument in writing into evidence in a court of law; filing a court paper, document, record or other instrument in writing with the court; marking a book, paper, document, record or other instrument in writing for identification; attaching a book, paper, document, record or other instrument in writing to a declaration; providing a book, paper, document or other instrument in writing, either in response to a subpoena or by agreement with an opposing party; offering testimony regarding a book, paper, document, record or other instrument in writing; reading a book, paper, document, record or other instrument in writing into the record; or presenting a book, paper, document, record or other instrument in writing for consideration upon any trial, proceeding, inquiry or investigation, whatever, authorized by law.  [¶] There is no requirement that the book,

19

paper, document, record or other instrument in writing that is offered has to be under oath or by declaration under penalty of perjury. [¶] An administrative review is an inquiry permitted by law." (Italics added.)

Defendant argues the instruction was erroneous because "the language '*offer in evidence may include, but does not necessarily need to include the following . . . ,*' resulted in an instruction with no meaningful definition or limitation on what constituted offering into evidence false evidence. . . . Other than listing examples, the instruction did not provide any specific language defining 'offer in evidence' or imposing some limit on that concept." The Attorney General argues that defendant waived this argument because he never submitted a clarifying instruction about the meaning of "offers in evidence," and, in any event, a jury could understand "offers in evidence," and the examples "only served to diminish the likelihood that the jury would misconstrue the meaning of the phrase." The Attorney General concludes that even if there was instructional error, defendant suffered no prejudice.

"It is settled that 'a defendant need not object to preserve a challenge to an instruction that incorrectly states the law and affects his or her substantial rights.' [Citations.] Even so, ' "a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or *incomplete* unless the party has requested appropriate clarifying or amplifying language." ' [Citation.]" (*People v. Mackey* (2015) 233 Cal.App.4th 32, 106.) Here, defendant's challenge to the "may include" language in the jury instruction is that it provided "no meaningful definition or limitation" to what "offers in evidence" means. This is an argument that the instruction was too general or incomplete. As such, defendant needed to propose amplifying and clarifying language to the trial court. There is nothing in the record to show he did so, and the argument is therefore waived. Defendant claims he submitted "special instruction number three" to address this issue, but this instruction is not part of the record on appeal, and the record does not otherwise indicate that it was presented to the trial court for its consideration.

20

Even if defendant had not waived his challenge to the "may include" language, we find no error with the instruction given by the court. The first part of the jury instruction tracks the language of section 132 and includes all of the elements of a section 132 claim. Defendant does not, and cannot, argue that instructing the jury by using the language of section 132 was improper. "If the jury would have no difficulty in understanding the statute without guidance, the court need do no more than instruct in statutory language." (*People v. Poggi* (1988) 45 Cal.3d 306, 327.) Defendant cites no authority (and we are aware of none) holding that an instruction which tracks the language of a statute necessarily is given in error if the instruction goes on to give further explanation.

Moreover, even if we determined that the trial court erred by giving examples of what offers in evidence "may include," defendant was not prejudiced by the error. Defendant argues that the prosecutor "referred repeatedly" to the challenged instruction during closing argument. To the contrary, the prosecutor told the jury it did not need to consider the full list of examples in the jury instruction and should focus on the last example about "presenting" a document "for consideration" upon any trial or proceeding. The prosecutor stated: "The Court read to you, it may include but does not necessarily need to include all of these things. And I admit, none of these things happened. . . . It was completely, completely irrelevant because the Court also read to you that 'offer in evidence' is presenting a paper, document, record or other writing for consideration upon a trial, proceeding, inquiry or investigation, whatever, authorized by law." In other words, the prosecutor focused the jury on the language of the statute, not the list of "irrelevant" examples that had nothing to do with the evidence in this case.

As defendant acknowledges, the evidence at trial was essentially undisputed. As to count 1, a full transcript of the January 12 hearing was admitted into evidence as one of the prosecution's exhibits. As to count 2, defendant admitted at trial that he provided fraudulent documents to DCSS on February 29 with the hope that DCSS would review the documents and stop garnishing his wages. In essence, the jury was presented with largely undisputed evidence about the circumstances by which the documents were used. Most of the examples in the compendium given by the court were in fact irrelevant to

21

how the fraudulent documents were used by defendant in this matter. On this evidence, it was not "reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error." (See *People v. Watson* (1956) 46 Cal.2d 818, 836.) Even under the standard for constitutional error under *Chapman v. California* (1967) 386 U.S. 18, 24, we conclude beyond a reasonable doubt that any error was harmless.

Defendant also argues that the trial court erred by giving an "overbroad" jury instruction that "offer in evidence" included "presenting a book, paper, document, record, or other instrument in writing for consideration upon any trial, proceeding, inquiry, or investigation whatever, authorized by law." Defendant contends that "[t]his sentence did not require the evidence to be presented to the trial court. Under the over broad definition of 'offer in evidence,' in the jury instruction given by the trial court, appellant offered a document in evidence if he merely handed it to the prosecutor." The Attorney General argues that defendant waived this argument by failing to submit a clarifying instruction to the trial court, but that, in any event, this is simply a restatement of the argument that "offers in evidence" does not cover the type of conduct defendant engaged in at the court hearing on January 12 and at DCSS's offices on February 29.

To the extent that defendant's argument is that the trial court misstated the law, the argument is not waived. As we have noted, " 'a defendant need not object to preserve a challenge to an instruction that incorrectly states the law and affects his or her substantial rights.' " (*People v. Mackey, supra,* 233 Cal.App.4th at p. 106.) Nevertheless, we find defendant's challenge to this portion of the instruction unavailing. The instruction states in its entirety that a document must be "present[ed] . . . upon any trial, proceeding, inquiry, or investigation whatever, authorized by law." A reasonable juror could not construe the instruction as saying that "merely" handing a document to a prosecutor without more means the document was offered in evidence. To the extent defendant is arguing that the instruction was erroneous because it allowed the jury to convict him when he did not formally introduce a document into an evidentiary record, this restates defendant's sufficiency of the evidence arguments, which we have rejected. "There

22

simply is no requirement that a document must be moved into evidence in order to constitute a violation of section 132." (*People v. Bhasin, supra*, 176 Cal.App.4th at p. 468.)

## DISPOSITION

The judgment is affirmed.

_____
Miller, J.

We concur:

_____
Richman, Acting P.J.

_____
Stewart, J.

A141550, *People v. Gallardo*

Trial Court:  Superior Court of San Mateo County

Trial Judge:  Hon. Barbara J. Mallach


Attorney for defendant and-appellant          John L. Staley

                                              By appointment of the Court of Appeal
                                              under the First District Appellate
                                              Project's Independent Case System


Attorneys for plaintiff and respondent         Kamala D. Harris
                                              Attorney General
                                              Gerald A. Engler
                                              Chief Assistant Attorney General
                                              Jeffrey M. Laurence
                                              Acting Senior Assistant Attorney
General

                                              Elizabeth W. Hereford
                                              Deputy Attorney General


A141550, *People v. Gallardo*